In the Matter of GENERAL STEEL
TANK COMPANY, INC., Bankrupt.

MERRITT–HOLLAND WELDING SUP-
LIES, INC., et al., Appellants,

v.

GENERAL STEEL TANK COMPANY,
INC., Appellee.

No. 72–2279.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1973.

Decided May 4, 1973.

L. Patten Mason, Beaufort, N. C., El-
lis L. Aycock, Wilmington, N. C., and
John A. Mraz, Charlotte, N. C. (Wheatly
& Mason, Beaufort, N. C., Stevens, Mc-

Ghee, Aycock, Morgan & Lennon, Wilmington, N. C., and Mraz, Aycock & Casstevens, Charlotte, N. C., on brief), for appellants.

Hubert Humphrey, Greensboro, N. C. (McLendon, Brim, Brooks, Pierce & Daniels, Greensboro, N. C., on brief), for General Steel Tank Co., Inc.

Larry B. Sitton, Greensboro, N. C. (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for Fidelity and Deposit Co. of Md.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and BRYAN, District Judge.

BUTZNER, Circuit Judge:

This appeal concerns the right of attaching creditors to seek recovery against an unindemnified surety on bonds given to release an insolvent debtor's property that had been attached within four months before the filing of an arrangement under Chapter XI of the Bankruptcy Act.[1] The district court, affirming the referee, held that § 67(a) of the Act rendered the bonds null and void, and it restrained the attaching creditors from continuing state court suits to recover from the surety the accounts owed by the debtor. Because we hold that the Act does not discharge the liability of an unindemnified surety, we vacate the judgment of the district court and remand the case for modification of the referee's order.

Creditors of General Steel Tank Co., Inc., alleging that the company was removing its property from North Carolina, attached the property through proceedings filed in state courts. The attachments were discharged when General Steel posted bonds conditioned on its paying any judgments that might be obtained by attaching creditors but limiting liability on the bonds to the value of the property attached. Fidelity & Deposit Company of Maryland was the surety on the bonds. Within four months, General Steel filed a petition for an arrangement.

The referee found that General Steel was insolvent when the creditors secured the attachments. He declared the attachment liens and the bonds null and void, and he enjoined the attaching creditors from continuing their state court suits to subject the surety to liability.

The attaching creditors, reserving their rights against the surety, participated in the arrangement, but they also sought permission to continue their state court actions so they could establish General Steel's liability as principal and pursue their remedies against the surety. They acknowledge that any judgments awarded by the state courts can be executed only against the surety, not against General Steel, and they are willing to have this restriction expressed in the referee's order.

General Steel and its surety challenge the attaching creditors' right to obtain judgments in the state courts against General Steel even for the limited purpose of subjecting the surety to liability on the bond. The Bankruptcy Act, however, does not support their contention. Continuation of state court actions to impose liability on the debtor's surety is a recognized procedure,[2] and the attaching creditors' participation in the arrangement and receipt of a

1. Section 302 of the Act [11 U.S.C. § 702 (1970)] makes §§ 16 and 67(a) [11 U.S.C. §§ 34 and 107(a) (1970)], with which this opinion is primarily concerned, applicable to proceedings for arrangements under Chapter XI.

2. See Manufacturers' Finance Corp. v. Vye-Neill Co., 62 F.2d 625, 628 (1st Cir.), cert. denied, 289 U.S. 738, 53 S.Ct. 657, 77 L.Ed. 1486 (1933); Brown v. Four-In-One Coal Co., 286 F. 512 (6th Cir.), cert. denied, 262 U.S. 749, 43 S.Ct. 524, 67 L.Ed. 1213 (1923). Cf. Gordon v. Calhoun Motors, Inc., 222 N.C. 398, 23 S.E. 2d 325 (1942). See also 1A Collier, Bankruptcy 1535 (1972); 4 Remington, Bankruptcy 87 (1957); Glenn, The Surety's Right to Indemnity—Effect of Principal's Bankruptcy, 31 Yale L.J. 582, 586 (1922). Contra Morgan v. Cummings, 117 So.2d 606 (La.App.1960).

fraction of the indebtedness does not bar this relief.[3]

■ Section 16 of the Act provides that the discharge of a debtor shall not alter the liability of his surety.[4] This provision rests on the premises that a discharge is personal and that it results from operation of the law, not the consent of the creditor.[5] These principles form the background for interpreting the specific provisions of § 67(a), which pertain to a surety's liability on a bond given to release an attachment lien. The purpose of § 67(a) is to foster the equitable distribution of the debtor's property by preventing the creation of preferences by judicial liens, either directly, or indirectly through the interposition of a surety. Under § 67(a)(1), a lien obtained by attachment within four months before the filing of a petition for arrangement is deemed null and void if the debtor was insolvent at the time the lien was obtained.[6] If a lien deemed null and void under § 67(a)(1) has been dissolved by a releasing bond, the transfer of property, or the creation of a lien, for the indemnification of the surety is deemed null and void under § 67(a)(2).[7] As a corollary to the preceding provisions, § 67(a)(3) renders property and liens affected by §§ 67(a)(1) and (2) available for the benefit of the debtor's estate.[8] Finally, when § 67(a)(2) nulli-

3. Goodwin & Sigel v. Boston Clothing Co., 47 R.I. 25, 129 A. 611 (1925). *See* 1A Collier, Bankruptcy 1527 (1972) and 4 Collier, Bankruptcy 161 (1971). Of course, the attaching creditors may recover only that portion of the indebtedness that has not been paid.

4. Section 16 of the Bankruptcy Act [11 U.S.C. § 34 (1970)] provides:
   "The liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt."

5. 1A Collier, Bankruptcy 1523 (1972).

6. Section 67(a)(1) of the Bankruptcy Act [11 U.S.C. § 107(a)(1) (1970)] provides:
   "Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title: *Provided, however,* That if such person is not finally adjudged a bankrupt in any proceeding under this title and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided."

7. Section 67(a)(2) of the Bankruptcy Act [11 U.S.C. § 107(a)(2) (1970)] provides:
   "If any lien deemed null and void under the provisions of paragraph (1) of this subdivision, has been dissolved by the furnishing of a bond or other obligation, the surety on which has been indemnified directly or indirectly by the transfer of or the creation of a lien upon any of the nonexempt property of a person before the filing of a petition initiating a proceeding under this title by or against him, such indemnifying transfer or lien shall also be deemed null and void: *Provided, however,* That if such person is not finally adjudged a bankrupt in any proceeding under this title, and if no arrangement or plan is proposed and confirmed, such transfer or lien shall be deemed reinstated with the same effect as if it had not been nullified and voided."

8. Section 67(a)(3) of the Bankruptcy Act [11 U.S.C. § 107(a)(3) (1970)] provides:
   "The property affected by any lien deemed null and void under the provisions of paragraphs (1) and (2) of this subdivision a shall be discharged from such lien, and such property and any of the indemnifying property transferred to or for the benefit of a surety shall pass to the trustee or debtor, as the case may be, except that the court may on due notice order any such lien to be preserved for the benefit of the estate, and the court may direct such conveyance as may be proper or adequate to evidence the title thereto of the trustee or debtor, as the case may be: *Provided, however,* That the title of a bona-fide purchaser of such property shall be valid, but if such title is acquired otherwise than at a judicial sale held to enforce such lien, it shall be valid only to the extent of the present consideration paid for such property."

fies the protection a surety has obtained through indemnification, § 67(a)(5) discharges the surety of his liability to the extent the indemnifying property or lien enhances the debtor's estate.[9]

In this case no party claims that General Steel transferred any property, or created any lien, for the indemnification of the surety. Nevertheless, the referee held, and the district court affirmed, that the policy of the Bankruptcy Act would be subverted by allowing the attaching creditors to recover a greater portion of their debts than other creditors even though the surety, not the debtor, would pay the difference. This conclusion, however, conflicts with § 16, which recognizes the legitimacy of a creditor's recovery against a surety despite the principal's discharge in bankruptcy.[10] When § 67(a) is read in the light of § 16, it is apparent that allowing attaching creditors to recover a portion of their claims against a surety on a releasing bond does not contravene the policy of the Bankruptcy Act. The loss suffered by the attaching creditors is simply transferred to the surety without affecting the debtor's estate or his other creditors.[11]

The referee and the district court also ruled that under North Carolina law the bonds given to release the attachment were statutory forthcoming bonds that stood as a substitute for the attached property, and not payment bonds for the satisfaction of any judgments that might be obtained by the attaching creditors. They held that the Act's nullification of the attachment liens also dissolved the bonds and discharged the liability of the surety.

The bankruptcy court's ruling does not, we believe, give appropriate consideration to the legislative history of § 67(a). Prior to 1934, the predecessor to § 67(a)[12] contained no provision governing the surety's liability when an attachment lien was discharged by a bond. Most cases held that bankruptcy did not relieve the surety of his liability,[13] although a minority ruled that the surety was released.[14] In 1934, Congress amended the Act to incorporate the minority view by expressly providing that the bond given to dissolve an attachment

---

9. Section 67(a)(5) of the Bankruptcy Act [11 U.S.C. § 107(a)(5) (1970)] provides:
   "The liability of a surety under a releasing bond or other like obligation shall be discharged to the extent of the value of the indemnifying property recovered or the indemnifying lien nullified and voided by the trustee or debtor, or, where the property is retained pursuant to the provisions of paragraph (4) of this subdivision, to the extent of the amount paid to the trustee or debtor."

10. *See e. g.* Hill v. Harding, 130 U.S. 699, 9 S.Ct. 725, 32 L.Ed. 1083 (1889) (attachment bond). Section 16 has been applied in a wide variety of other situations to permit a creditor to recover against a co-debtor, guarantor, or surety of a discharged debtor: Barrick v. Barnes, 46 Ill.App.2d 172, 196 N.E.2d 526, 527 (1964) (co-maker of a promissory note); Miller v. Collins, 328 Mo. 313, 40 S.W. 2d 1062, 1065 (1931) (liability insurer); In Re Marshall Paper Co., 102 F. 872, 874 (1st Cir. 1900) (corporate officers); Dominion Culvert & Metal Corp. v. United States Fid. & Guar. Co., 238 S.C. 452, 120 S.E.2d 518, 521 (1961) (construction performance bond); Brown & Brown Coal Co. v. Antezak, 164 Mich. 110, 128 N.W. 774, 130 N.W. 305 (1910) (appeal bond). *See generally* 1A Collier, Bankruptcy § 16.01 et seq. (1972).

11. Williams v. United States Fid. & Guar. Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); Manufacturers' Finance Corp. v. Vye-Neill Co., 62 F.2d 625, 628 (1st Cir.), cert. denied, 289 U.S. 738, 53 S.Ct. 657, 77 L.Ed. 1486 (1933).

12. Section 67(f) of the Bankruptcy Act of 1898, ch. 541, § 67, 30 Stat. 564.

13. *See e. g.* Brown v. Four-In-One Coal Co., 286 F. 512 (6th Cir.), cert. denied, 262 U.S. 749, 43 S.Ct. 524, 67 L.Ed. 1213 (1923). *See also* 4 Collier, Bankruptcy 157 n. 4 (1971).

14. *See e. g.* Republic Rubber Co. v. Foster, 95 Conn. 551, 111 A. 839 (1920). *See also* 4 Collier, Bankruptcy 157 n. 4 (1971).

lien was null and void.[15] Congress again amended the section in 1938, this time to substantially its present form.[16] The 1938 amendment abolished the 1934 clause that voided all bonds when the liens underlying them were invalidated, and it replaced the clause with § 67(a)(5), which discharged only those sureties whose indemnifying transfers had been voided under § 67(a)(2). The amendment makes no reference to the distinction between forthcoming bonds and payment bonds. It classifies both types as "releasing bonds." The inten-

tion to expand surety liability seems obvious, for otherwise there would have been no need to alter the 1934 statutory framework.

The congressional intent is made even clearer by the legislative history of the 1938 amendment. The House committee report recognized that under the amendment the surety could remain liable even when § 67(a)(1) voided the underlying lien. However, the committee noted that the credit for the value of the indemnifying property allowed by § 67(a)(5) prevents injustice to the surety.[17] The

15. From 1934 until 1938, § 67(f) of the Act read as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, *and any bond which may be given to dissolve any such lien so created, shall be deemed null and void in case he is adjudged a bankrupt*, and the property affected by the levy, judgment, attachment, or other lien, and any nonexempt property of his which he shall have deposited or pledged as security for such bond or to indemnify any surety thereon, shall be deemed wholly discharged and released from the same, and shall pass to the trustee. . . ." Act of June 7, 1934, ch. 424, § 5, 48 Stat. 924 (emphasis added).

16. Act of June 22, 1938, ch. 575, § 67, 52 Stat. 875. The current wording of the section may be found in 11 U.S.C. § 107 (a) (1970); *see* notes 6–9, *supra*.

17. With reference to § 67(a)(2), the committee reported:

"Section 67(a)(2) is intended to avoid an indirect preference, such as may be created by the obtaining of an attachment lien against the debtor, who procures its release by furnishing a surety bond and indemnifying the surety by transferring or pledging property which otherwise would pass to the trustee. Sometimes this process is carried one step further by having the surety indemnified by a relative or friend of the debtor, who in turn is indemnified by a transfer or pledge of the debtor's property. Even though the original lien may be dissolved by the debtor's bankruptcy, the lienholder may nevertheless proceed on the bond and recover from the surety. In re Federal Biscuit Co., (2 Cir., 214

F. 221). The creditor thus is effectually preferred, while the surety, who has given an adequate present consideration for the transfer of the bankrupt's property, would be entitled to retain his security. The net result to the bankrupt estate is a transfer for the purpose of effecting a preference, which cannot be set aside under any specific provision of the act. The purpose is to enable such a transfer to be set aside, and since the surety is given credit for the value of the property recovered no injustice is done to him." H.R.Rep.No.1409, 75th Cong., 1st Sess. at 33 (1937).

A National Bankruptcy Conference analysis of a similar bill from the preceding year provides further evidence that the 1938 amendment was intended to discharge an unindemnified surety. Speaking critically of the 1934 amendment to § 67(f) of the Bankruptcy Act, the analysis states:

"The section, thus amended [in 1934], is expanded to render null and void 'any bond which may be given to dissolve any such lien so created', and 'any nonexempt property of his (debtor) which he shall have deposited or pledged as security for such bond or to indemnify any surety thereon' is discharged and released. This provision is unsound in that it extends beyond the purpose of protecting property of the estate. Where the obligation of the surety is covered by indemnity, consisting in part of property of a third person, it would seem proper to release the bond only to the extent covered by the bankrupt's property. Thus the attaching or lien creditor would be entitled to recover from the surety, and the surety would continue liable on his obligation, to the extent of the amount remaining undischarged after credit is given for the value of the property recovered by the trustee for the estate." National Bank-

emphasis in the House committee report on the limited nature of release granted to sureties by § 67(a)(5) provides additional support for our interpretation of § 67(a). According to the report, the provision discharging the liability of a surety applies only to "the case where a lien has been released by the furnishing of a bond, the surety of which has been indemnified."[18] The narrow scope of § 67(a)(5) indicates that Congress intended only a limited exception to the general rule of continued surety liability.

■ In sum, we conclude that the Bankruptcy Act does not discharge the liability of an unindemnified surety on a bond given to release the property of an insolvent debtor that was attached within four months before a petition for arrangement.[19] But this holding is not to be read as conclusively imposing liability on the surety. The bankruptcy court's adjudication of the surety's liability ends after it determines when the attachments were given, whether the debtor was insolvent at that time, what transfers of property and liens are deemed null and void, and to what extent the liability of the surety must be discharged under the Act because of the indemnifying property and liens he must surrender for the benefit of the debtor's estate. The surety's liability ultimately must be decided in a forum other than the bankruptcy court, where the validity of the attachment and the effect of state law on the surety's undertaking can be litigated. Nothing that we have written reflects on these issues. We hold only that the Bankruptcy Act did not discharge the unindemnified surety.

Accordingly, the judgment of the district court is vacated, and the case is remanded so the referee's order may be modified to delete the declaration that the bonds are null and void and that no recourse may be had against the surety. The injunction should be modified to

---

ruptcy Conference Analysis of H.R. 12889, Hearings on Amendments to the Bankruptcy Act of 1898 Before the House Judiciary Comm., 74th Cong., 2d Sess. at 208 (1936).

18. The section of the committee report discussing § 67(a)(5) states:

"Clause (5) relates only to the case where a lien has been released by the furnishing of a bond, the surety of which has been indemnified. If the transfer or indemnifying lien is set aside, the surety is obviously entitled to a proportionate credit. The court which sets aside the transfer or lien determines its value; and it is specifically provided that the obligee· on the bond, who has been given notice of the proceeding, shall be bound by this determination of value. The credit given the surety is limited to the value of the property actually recovered by the trustee or debtor or the value of the lien, if the lien is set aside, or the amount actually paid to the trustee or debtor where the proceeding is to recover money rather than to recover the property itself or to set aside the lien."

This comment was taken almost verbatim from the National Bankruptcy Conference analysis, which was prepared by the drafters of the 1938 amendments. *See*

National Bankruptcy Conference Analysis of H.R. 12889, Hearings on Amendments to the Bankruptcy Act. of 1898 Before the House Judiciary Comm., 74th Cong., 2d Sess. at 210 (1936).

19. This interpretation of § 67(a) follows that suggested by the leading bankruptcy commentators:

"[T]he lien creditor is now entitled to enforce the bond of the surety to the extent of the amount of the obligation remaining undischarged after credit is given for the value of any of the bankrupt's nonexempt property recovered from the surety by the trustee in bankruptcy." 4 Collier, Bankruptcy 160 (1971).

"The state court proceedings can go forward notwithstanding avoidance of the attachment or other lien by the statute upon initiation of bankruptcy proceedings, for the purpose of determining whether there is liability on˙ the release bond and to enforce such liability if it is enforceable under state law." 4 Remington, Bankruptcy 87 (1957). *Cf.* Morris Plan Bank v. Simmons, 201 Ga. 157, 39 S.E.2d 166 (1946); Bates Street Cigar & Confectionery Co. v. Howard Cigar Co., 137 Me. 151, 15 A.2d 190 (1940). *But cf.* Morgan v. Cummings, 117 So.2d 606 (La.App.1960).

permit the attaching creditors to pursue their state court actions and to bar them from executing any judgments against General Steel. The attaching creditors shall recover their costs against the Fidelity & Deposit Company of Maryland.